**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL NO. 1:05CV235**

| | |
|---|---|
| **PURE COUNTRY WEAVERS, INC.** )<br>)<br>**Plaintiff,** )<br>)<br>**VS.** )<br>)<br>**BRISTAR, INC.; THE PARADIES** )<br>**SHOPS, INC.; JOHN AND JANE DOES** )<br>**(1-100); and ABC CORPORATIONS** )<br>**(1-100),** )<br>)<br>**Defendants.** )<br>_____ ) | **MEMORANDUM<br>AND ORDER** |

     **THIS MATTER** is before the Court on motion of Defendant Bristar,

Inc. ("Bristar") to dismiss the complaint and the cross-claims of Defendant

The Paradies Shops, Inc. ("Paradies") for lack of subject matter jurisdiction

and for failure to state a claim upon which relief can be granted pursuant to

Fed. R. Civ. P. 12(b)(1) and (b)(6).

# I. STATEMENT OF FACTS

Plaintiff Pure Country Weavers, Inc. ("Plaintiff" or "Pure Country") is a family-owned North Carolina corporation engaged in the manufacture and sale of textile art.  **Complaint, ¶ 4.**  Defendant Bristar is a California corporation engaged in importing and selling products.  ***Id.*, ¶¶ 5, 19.** Defendant The Paradies Shops, Inc. ("Paradies") is a Georgia corporation engaged in the retail business and operates "over 300 news, gifts and specialty stores in about sixty U.S. and Canadian airports."  ***Id.*, ¶¶ 6, 22.** Defendants "John and Jane Does 1-100 are individuals who are causing Pure Country's textile art design to be distributed as affiliates of Defendant Bristar," and Defendants "ABC Corporations 1-100 are corporations who are causing Pure Country's textile art design to be distributed as affiliates of Defendant Bristar."  ***Id.*, ¶¶ 7, 8.**

This dispute centers around a design "entitled 'In the Wild,' which entails an African or safari motif with animal skin patterns and silhouetted animal depiction (hereinafter referred to as the 'Wild' design)."  ***Id.*, ¶ 14.** The Wild design was created by Plaintiff's employees in 1999 and was first made widely available the same year.  ***Id.*, ¶15.**  In 2000 the Wild design was incorporated into an afghan blanket and made available on the

market.  *Id.,* **¶ 16.**  Plaintiff Pure Country owns the copyright for the Wild

design and, in addition to selling merchandise with the design on its own,

has licensed third parties to sell products incorporating the Wild design.[1]

*Id.,* **¶¶ 17, 18.**

Pure Country alleges that Bristar has reproduced and distributed

unauthorized copies of the Wild design, manufacturing and incorporating

the design into such products as bags and luggage which are then sold to

vendors, distributors or retailers.  *Id.,* **¶¶ 20, 21.**  According to Plaintiff,

Paradies has purchased such products from Bristar, which it then resold to

the general public.  *Id.,* **¶ 22.**  Plaintiff Pure Country also asserts that

"Defendant Bristar has created a network of affiliates (Defendants John

and Jane Does 1-100 and ABC Corporations 1-100) who . . . have

reproduced or distributed unauthorized copies of Pure Country's Wild

design."  *Id.,* **¶ 24.**  Plaintiff has asserted a claim for copyright infringement

against each Defendant.  *Id.,* **¶¶ 30-50.**

---

[1]Plaintiff applied for registration of the Wild design with the U.S. Library of Congress' Copyright Office on March 11, 2005.  **Complaint, ¶ 17.**  The registration was accepted by the Copyright Office, with an effective date of March 14, 2005.  ***See* Certificate of Registration, *attached to* Declaration of Joshua J. Kaufman to Supplement the Record Herein, filed September 8, 2005.**

Paradies denies infringing any copyright held by Pure Country.

**Answer and Cross-Claim of The Paradies Shops, Inc. ("Paradies' Answer"), filed July 18, 2005, at 13-14 (responding to paragraphs 37-43 of the Complaint).** In addition, Paradies has asserted cross-claims against Bristar for declaratory judgment, breach of warranty, and breach of indemnification obligation. ***Id.*, Cross-Claim ¶¶ 30-46.** The relationship between Paradies and Bristar began in 2003, when Paradies met Dony ("Los Angeles") Corporation ("Dony"), Bristar's successor-in-interest, at a trade show. ***Id.*, Cross-Claim ¶ 8.** Dony presented Paradies with luggage bearing the "Safari" pattern for its consideration.[2] ***Id.*, Cross-Claim ¶ 9.** After negotiations between Dony and Paradies, Paradies began purchasing luggage – including luggage bearing the "Safari" design – from Dony. ***Id.*, Cross-Claim ¶¶ 10, 11.** Paradies asserts that it "did not create, assist in creating, and does not have knowledge about the creation of the 'Safari' design," but rather "relied exclusively upon Dony to to (sic) ensure that it had created, was properly licensed, or otherwise owned all rights, to

---

[2]Paradies asserts that the Wild design sold by Pure Country is different than "the several and distinguishable 'Safari' designs sold by Bristar[.]" ***See, e.g.,* Paradies' Answer, at 7 (responding to paragraph 14 of the Complaint).**

sell the 'Safari' luggage." ***Id.*, Cross-Claim ¶¶ 12, 13.** The Paradies

account was subsequently transferred to Bristar, with the Paradies-Bristar

relationship based more on course of performance than a written

agreement.

> 18.
>
> On August 19, 2003, Paradies entered into an agreement with Bristar. This agreement, while extremely vague and ambiguous, deals with Bristar's obligation to store merchandise pending issuance of a purchase order by Paradies.
>
> 19.
>
> As to quantity, price, and shipping instructions, the course of performance between the Parties was such that: (a) Paradies would issue a Purchase Order from its offices in Atlanta for identified quantities of luggage pieces; (b) Bristar would thereafter deliver the luggage pieces to Paradies' shops located in airports around the nation; (c) Bristar would issue an invoice to Paradies; (d) Paradies would identify any credits, which included damaged or defective product or invoice amount discrepancies; (e) Paradies would pay the invoice as reduced by such credits; and (f) Bristar thereafter accepted and deposited the checks paying the invoice as reduced by the identified and applicable credits.

***Id.*, Cross-Claim ¶¶ 18-19.** Paradies asserts that Bristar, as a merchant

regularly dealing in goods of this kind, warranted pursuant to the Ga. Code

Ann. § 11-2-312 that there would be no rightful claim of infringement by

any third party (*i.e.* warranty of title). Paradies claims Bristar breached this

warranty and its duty to indemnify Paradies. ***Id.*, Cross-Claim ¶¶ 20-21, 24-26.**

Bristar has moved to dismiss Pure Country's complaint and Paradies' cross-claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ***See, Bristar's Memorandum in Support of its Motion to Dismiss the Complaint and Cross-Claims ("Bristar's Memorandum"), filed September 1, 2005.***[3] Bristar argues that Pure Country's complaint must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Pure Country did not, at the time the complaint was filed, possess either a registration for the Wild design or a refusal to register by the Copyright Office. ***Id.*, at 3-11.** In regards to the cross-claims of Paradies, Bristar argues: (1) Because Pure Country's complaint must be dismissed, Paradies' cross-claims must also be dismissed as the Court would no longer have jurisdiction over the cross-claims; (2) Bristar has disclaimed its warranties of title and against infringment under Ga. Code Ann. § 11-2-312, and in any event, "Bristar's liability is limited to the

---

[3]Bristar does not seek dismissal of the complaint under Rule 12(b)(6); however, Bristar does argue for dismissal of Paradies' cross-claims under both Rules 12(b)(1) and (b)(6).

replacement or repair of damaged merchandise;" and (3) Paradies'

indemnity claim is preempted by the Copyright Act. ***Id.*, at 11-16.**

## II. STANDARD

"The existence of subject matter jurisdiction is a threshold issue"

which must be addressed before the merits of the case. ***Jones v. Am.***

***Postal Workers Union*, 192 F.3d 417, 422 (4ᵗʰ Cir. 1999).** The parties or

the court, acting *sua sponte*, may raise the issue of subject matter

jurisdiction at any time. ***New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d**

**143, 150 (4ᵗʰ Cir. 2000).** The plaintiff bears the burden of proving that

subject matter jurisdiction exists. ***Evans v. B.F. Perkins Co.,* 166 F.3d**

**642, 647 (4ᵗʰ Cir. 1999).** Where, as here, the defendant contends "that a

complaint simply fails to allege facts upon which subject matter jurisdiction

can be based[,] . . . all the facts alleged in the complaint are assumed to be

true and the plaintiff, in effect, is afforded the same procedural protection

as he would receive under a Rule 12(b)(6) consideration." ***Adams v. Bain*,**

**697 F.2d 1213, 1219 (4ᵗʰ Cir. 1982); *United States v. North Carolina*,**

**180 F.3d 574, 580 (4ᵗʰ Cir. 1999) (citing *Adams*).**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), "'the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.'" ***T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).** All reasonable inferences should also be drawn in the plaintiff's favor. ***Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).** "[A] district court may dismiss a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." ***Lambeth v. Bd. of Comm'rs of Davidson County, NC*, 407 F.3d 266, 268 (4th Cir.), *cert. denied*, 126 S. Ct. 647 (2005).**

## III. DISCUSSION

## A. Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction

Before addressing Bristar's motion under Rule 12(b)(6), the Court must first resolve Bristar's lack of subject matter jurisdiction allegation.

***Jones*, *supra.*** Bristar claims that this Court lacks subject matter jurisdiction because, at the time the complaint was filed, Plaintiff had applied for a copyright on its Wild design but had not received certification from or had its application denied by the Copyright Office. Defendant argues that jurisdiction under the Copyright Act will only lie when one of those two things has occurred. This is often termed the "registration approach" to Copyright Act jurisdiction. ***See Derminer v. Kramer*, 386 F. Supp. 2d 905, 911 (E.D. Mich. 2005) ("[T]he registration approach finds subject matter jurisdiction only when the Copyright Office has either accepted or rejected [a proper copyright application] before the suit was filed.").** Conversely, Plaintiff asserts that simply having applied for registration is enough to confer jurisdiction on this Court under the Act. This position is referred to as the "application approach." ***Id.* ("The application approach finds subject matter jurisdiction when the date of a proper application precedes the date of filing[.]").** The federal courts are as divided as the parties here on whether the "application" or

"registration" approach is the correct jurisdiction approach.[4]  In this case,

however, the Court has no need to pick a side.

On September 8, 2005, Plaintiff filed an affidavit stating that the

registration from the Copyright Office had been received and attached the

registration.  **See Certificate of Registration, *attached to* Kaufman**

**Declaration, *supra.***  This occurred only seven days after Bristar's motion

to dismiss was filed, and long before briefing on the topic had been

completed or this Court had begun to consider the motion.  Plaintiff

allegedly asked Bristar to withdraw its motion to dismiss for lack of subject

---

[4]***See, Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357 (5th Cir. 2004) (held "application approach" is proper); *Datatel, Inc. v. Rose & Tuck, LLC*, 2005 WL 1668020 (E.D. Va. 2005) (same); *Iconbazaar, LLC v. America Online, Inc.*, 308 F.Supp.2d 630 (M.D.N.C. 2004) (same); Foraste v. Brown Univ., 248 F.Supp.2d 71 (D.R.I. 2003) (same); *Int;l Kitchen Exhaust Cleaning Ass'n v. Power Washers of North Am.*, 81 F.Supp.2d 70 (2000) (same); *SportsMEDIA Tech. Corp. v. Upchurch*, 839 F. Supp. 8 (D. Del. 1993) (same); *but see*, *La Resolana Architects v. Clay Realtors Angel Fire*, 416 F.3d 1195 (10th Cir. 2005) (held "registration approach" is proper); *Mays & Assoc. v. Euler*, 370 F.Supp.2d 362 (D. Md. 2005) (same); *Tabachnik v. Dorsey*, 2005 WL 1668542 (S.D.N.Y. 2005) (same); *Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*, 315 F.Supp.2d 1053 (C.D. Cal. 2004) (same); *Corbis Corp. v. Amazon.com, Inc.*, 351 F.Supp.2d 1090 (W.D. Wash. 2004) (same); *Zimmer v. CooperNeff Advisors, Inc.*, 2004 WL 2933979 (E.D. Pa. 2004) (same); *Gerig v. Krause Publ'ns, Inc.*, 33 F.Supp.2d 1304 (D. Kansas 1999) (same).*  Neither the Fourth Circuit Court of Appeals nor the district courts in this District have adopted either approach.

matter jurisdiction upon receipt of the registration, but Bristar refused to do so.  **See Plaintiff's Memorandum in Opposition to Defendant Bristar, Inc.'s Motion to Dismiss ("Plaintiff's Opposition"), filed October 3, 2005, at 1.**  It is clear that any defect in the pleading – if there is in fact a defect – could be cured by supplementing the complaint.[5]  However, Defendant Bristar – citing no possible prejudice, undue hardship, or any reason whatsoever – would have this Court dismiss the complaint only to have Plaintiff immediately refile the case, Defendant Paradies refile its answer and cross-claims, and this entire process begin anew.  **See Bristar's Reply Memorandum in Support of its Motion to Dismiss the Complaint and Cross-Claims ("Bristar's Reply"), filed October 17, 2005, at 4-5.**  There is ample authority for allowing Plaintiff to file a supplemental pleading reflecting receipt of the copyright registration and, therefore, quieting any subject matter jurisdiction concerns.  **See, e.g., Joseph J. Legat Architects, P.C. v. United States Dev. Corp., 601 F.**

---

[5]Plaintiff requested that if Bristar's motion to dismiss the complaint was not denied outright, that it be allowed to amend its complaint pursuant to Rule 15(c).  **See Plaintiff's Opposition, at 6-8.**  Although there is little practical difference between the two, because the amendment would concern matters occurring after the filing of the complaint, the proper avenue would be for Plaintiff to file a supplemental pleading pursuant to Rule 15(d).  **See Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002).**

**Supp. 673, 675 (N.D. Ill. 1985)[6]; *Demetriades v. Kaufmann*, 680 F.**

**Supp. 658, 661 (S.D.N.Y. 1988)[7]; *Rosedale v. News Syndicate Co. Inc.*,**

**39 F. Supp. 357, 358 (S.D.N.Y. 1941)[8]; *Frankel v. Stein & Day, Inc.*, 470**

---

[6]"When Legat filed this suit, it had merely applied for copyright registration; the Register of Copyrights had not yet approved the registration.  Thus, the precise issue raised in defendants' motion was whether an application for registration satisfied § 411(a) or whether that section requires final approval or denial of registration.  We need not resolve that issue, however, because it is now moot.  While the motion was being briefed, Legat's copyright registration was approved, as defendants concede in their reply brief.  *Even if we were to grant defendants' motion, Legat would simply amend the complaint on the basis of the now-valid registration.  Because the effective date of the registration is the date of application, see 17 U.S.C. § 410(d), the outcome would be the same as if we had denied defendants' motion.  Instead of resolving this moot issue, then, we grant Legat leave to amend its complaint to allege and attach its valid registration.*" ***Legat*, 601 F. Supp. at 675 (emphasis added).**

[7]"In the case at bar, plaintiffs only mailed their application for copyright protection to the Copyright Office on February 2.  When this action was instituted (February 8), a certificate of registration had not yet issued. Consequently, this court had no jurisdiction over the copyright claim.  A valid certificate, however, has since been issued (No. VA 290-080, effective February 2, 1988).  On March 1 (after this motion was noticed), an amended complaint was filed properly setting forth this court's jurisdiction based on the issuance of the certificate.  Accordingly, and in the interests of substantial justice, we treat this motion as deriving from a proper jurisdictional base." ***Demetriades*, 680 F. Supp. at 661.**

[8]"*If this were a suit where the conditions precedent had been satisfied after its institution, it would be proper to direct the plaintiff to file a supplemental complaint.*  But from what appears here, the plaintiff could not replead to correct the defect because he yet lacks proper registration." ***Rosedale*, 39 F. Supp. 358 (emphasis added).**  The *Rosedale* court dismissed the complaint without prejudice, leaving plaintiff with the

**F. Supp. 209, 212 n.2 (S.D.N.Y. 1979),** *aff'd***, 646 F.2d 560 (2d Cir.**

**1980)[9];** *see also Franks v. Ross***, 313 F.3d 184, 198 (4th Cir. 2003).[10]**

Therefore, finding no undue prejudice to Defendant Bristar nor any bad

faith or dilatory motive on the part of Plaintiff Pure Country, and in the

interest of substantial justice and judicial efficiency, the Court will deny

Defendant's motion to dismiss the complaint for lack of subject matter

jurisdiction.  The Court will allow Plaintiff to file a supplemental pleading

pursuant to Fed. R. Civ. P. 15(d), showing the date the certificate of

registration was received, the effective date of registration, and the

copyright number.  ***See Davis v. Piper Aircraft Corp.***, 615 F.2d 606, 613

**(4th Cir. 1980) ("In the absence of any apparent or declared reason**

─────────────────────

opportunity to refile when he had received proper registration.

    [9]"Frankel states in his reply affidavit that, upon learning of this defect, he immediately complied with the registration requirements of the [Copyright] Act and asks that the court permit amendment of the complaint to allege that such registration has taken place.  If such an amendment is made, we see no reason why the action may not proceed uninterrupted. . . . Plaintiffs are therefore given leave to amend their complaint."  ***Frankel***, **470 F. Supp. at 212 n.2 (internal citations omitted).**

    [10]*Franks* noted that "the filing of a supplemental pleading is an appropriate mechanism for curing numerous possible defects in a complaint," and "permitt[ed] plaintiffs to file amended complaint to demonstrate that, subsequent to filing of initial complaint, they complied with jurisdictional prerequisites of Title VII."  ***Franks***, **313 F.3d at 198 (citing** ***Bates v. W. Elec.***, **420 F. Supp. 521 (E.D. Pa. 1976).**

such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. the leave sought should, as the rules require, be 'freely given.'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))); *Franks, supra*, at 198 n.15 ("This distinction [between a supplemental pleading and an amended pleading] is of little practical significance, however, because the standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where good reason exists . . ., such as prejudice to the defendants." (citation and internal quotations omitted)).

**B. Motion to Dismiss Defendant Paradies' Cross-Claims**

Defendant Bristar has also moved to dismiss the cross-claims of Defendant Paradies under Rules 12(b)(1) and 12(b)(6). Paradies has asserted cross-claims against Defendant Bristar for: (1) Declaratory judgment for indemnification from Bristar under Georgia common law and

pursuant to Ga. Code Ann. § 11-2-312, and to set-off any amounts owed to Bristar pursuant to Ga. Code Ann. §§ 13-7-11, 13-7-5, and 23-2-76; (2) Breach of warranty of title under Ga. Code Ann. § 11-2-312; and (3) Breach of indemnification obligation under Ga. Code Ann. § 11-2-312.  ***See Paradies' Answer, Cross-Claim, ¶¶ 30-46.***  In response, Defendant Bristar makes three arguments: (1) "This Court cannot render declaratory judgment in this matter" because the Court lacks subject matter jurisdiction; (2) Paradies' breach of warranty of title claim must be dismissed because Bristar has disclaimed its warranties; and (3) Paradies' indemnity claim is preempted by the Copyright Act.  ***See Bristar's Memorandum, at 11-16.***

Inasmuch as Bristar's motion to dismiss the complaint for lack of subject matter jurisdiction has been denied, Bristar's first contention is now moot.

Bristar next asserts that Paradies' cross-claim for breach of warranty must be dismissed because Bristar has disclaimed its warranties of title and against infringement, and that Ga. Code Ann. § 11-2-312(3) (warranty against infringement) does not apply to copyrights.  ***Id.*, at 12-14.**  In making its disclaimer argument, Bristar relies on language contained on its

invoices, a sample of which is attached to Bristar's memorandum. ***Id.*, at Exhibit 2.** However, a motion to dismiss under Rule 12(b)(6) tests only the legal sufficiency of the complaint, and consideration of this outside material would convert the motion into one for summary judgment under Rule 56. ***See, e.g., Warth v. Seldin*, 422 U.S. 490, 527 (1975)*; Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 995 (4th Cir. 1997); *Mabry v. W & S Life Ins. Co.*, 2005 WL 325455, \*2 (M.D.N.C. 2005).** Therefore, the Court will not consider the invoice at this time and, as the invoice's language and its purported effect is the only basis for Defendant Bristar's motion in regards to disclaimer of warranties, Bristar's motion to dismiss is denied without prejudice to reassert this argument in a proper motion under Rule 56.

Defendant Bristar also argues that no claim can be stated under Ga. Code Ann. § 11-2-312(3) for breach of warranty against infringement because this section is inapplicable to copyrights. ***See* Bristar's Memorandum, at 13-14.** Bristar cites no cases reaching such a conclusion, nor has this Court found any authority stating that Ga. Code Ann. § 11-2-312, U.C.C. § 2-312, or the equivalent section of any other state's commercial code is inapplicable to copyrights. Rather, Bristar

bases its assertion on the absence of the word "copyright" from the text of the statute and the comments thereto, arguing that "[h]ad the Georgia legislature intended for copyright infringement to be included it certainly could have crafted the statute to say so or could have addressed the issue in its comments." *Id.*, at 14.

First, the mere presence of the terms "patent" and "trademark," and absence of the word "copyright," in the comments to Ga. Code Ann. § 11-2-312 is not determinative of this issue.[11]  While it is certainly true that the Georgia legislature could have chosen to craft the statute or comments thereto to expressly *include* copyrights, the legislature could have crafted the statute or comments  just as easily to expressly *exclude* copyrights. **See, e.g., Robinson v. Shell Oil Co., 519 U.S. 337, 342 (1997) (where in attempting to determine whether the term "employees" as used in Title VII includes "former employees," the Court stated: "That the statute could have expressly included the phrase 'former employees'**

---

[11]Nor is the absence of the word "copyright" in the text of the statute determinative.  Section 11-2-312 does not expressly refer to patents or trademarks.  Therefore, if Bristar's logic were followed regarding the absence of the word "copyright," the statute would be virtually meaningless because it would be inapplicable to patents, trademarks, or copyrights.

**does not aid our inquiry.  Congress also could have used the phrase**

**'current employees.'").**

Second, the text of the statute, referencing "infringement or the like,"

evidences an intent for broad application.  *See* **Ga. Code Ann. § 11-2-**

**312(3).**     The broad language of this section, comprehending
          "infringement or the like," applies to claims of
          copyright infringement although the Official
          Comment explicitly refers only to "claim[s] of
          infringement of a patent or trademark by a third
          party."  *See* J. White & R. Summers, *Uniform
          Commercial Code* 364 (2d ed. 1980) (section 2-
          312(3) applies to claims similar to patent and
          trademark infringement).  The policy underlying this
          statute –  that a merchant who regularly deals in
          like goods has a duty to insure that no claim of
          infringement by a third party mars the buyer's title –
          applies equally well to claims of copyright
          infringement.

*Dolori Fabrics, Inc. v. Limited, Inc.*, **662 F. Supp. 1347, 1358 (S.D.N.Y.**

**1987).**

Finally, the only two cases to have considered this precise issue

have determined that the warranty against infringement does apply to

copyrights.  *Id.*; *Chere Amie, Inc. v. Windstar Apparel Corp.*, **2003 WL**

**22056935, \*2 (S.D.N.Y. 2003).**  Bristar seems to be opposed to

consideration of cases from other jurisdictions on this issue.  *See,*

**Bristar's Reply, at 8-9.**  However, where there is no Georgia decision on

point, it is proper for the Court to look to the decisions of other jurisdictions

interpreting Uniform Commercial Code provisions.  ***See, In re Carmichael***

***Enter., Inc.,*** **334 F. Supp. 94, 99 (N.D. Ga. 1971),** ***aff'd***, **460 F.2d 1405**

**(5ᵗʰ Cir. 1972) ("The absence of any Georgia decisions on the issue**

**before the Court, coupled with the legislature's express desire for**

**national uniformity in the area of commercial law compels the Court**

**to examine the decisions of other Uniform Commercial Code**

**jurisdictions."); Ga. Code Ann. § 11-2-312 (warranty of title and**

**against infringement);** ***Dolori Fabrics, supra*** **(discussing U.C.C. § 2-**

**312, of which Ga. Code Ann. § 11-2-312 is a virtual carbon copy).**

Bristar's motion to dismiss Paradies' breach of warranty claim is therefore

denied.

Defendant Bristar's final argument is that Paradies' indemnity claim

should be dismissed because it is preempted by the Copyright Act.[12]

**Bristar's Memorandum, at 14-16; Bristar's Reply, at 6-8.**  Paradies

———————————

[12]Bristar also argues that Paradies has no claim for indemnification
under Ga. Code Ann. § 11-2-312 because that section does not apply to
copyrights.  ***See Bristar's Reply, at 8-9.***  The Court has rejected this
argument.

bases its claim for indemnification on both Georgia common law and Ga. Code Ann. § 11-2-312. **Paradies' Answer, Cross-Claim, ¶ 44.**

Generally, under Georgia common law, "[a] person who is compelled to pay damages because of liability imputed to him as the result of a tort committed by another may maintain an action for indemnity against the person whose wrong has thus been imputed to him." *North Ga. Elec. Membership Corp. v. Thomason & Holsomback Constr. Co., Inc.*, 157 Ga. App. 719, 720, 278 S.E.2d 433 (1981); *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 557, 583 S.E.2d 220, 224 (2003). However, where the basis for this action is the violation of a federal statute – such as the Copyright Act – "indemnification from another who has also violated the statute [is available] only if such right arises (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) via the power of the courts to formulate federal common law." *Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev. (Las Vegas)*, 934 F.2d 209, 212 (9th Cir. 1991) (citing *Texas Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 638 (1981)). This Court, like others, has previously determined that no right of indemnification was affirmatively created (either expressly or implicitly) by Congress in the Copyright Act,

and that this is not one of the "limited situations" in which the Court should formulate federal common law to create such a right.  ***See* Exhibit 1, Order in Civil No. 3:03cv429, *Christopher Phelps & Assocs., Inc., v. Galloway* (W.D.N.C. Feb. 24, 2004) (Mullen, C.J.), *attached to* Bristar's Reply; *Equity Builders & Contractors., Inc. v. Russell*, 2005 WL 2664243 (N.D. Ill. 2005)*; Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 416 (D.N.J. 2005)*; Lehman Bros., Inc. v. Wu*, 294 F.Supp.2d 504 (S.D.N.Y. 2003); *Johnston v. Smith*, 1997 WL 584349 (N.D. Ga. 1997).**  Therefore, Paradies' indemnification claim based on Georgia common law is dismissed with prejudice for failure to state a claim upon which relief can be granted.

Paradies' claim for indemnification under Ga. Code Ann. § 11-2-312, however, is not preempted by the Copyright Act.  Unlike Paradies' common law indemnification claim, Paradies' indemnity claim based on § 11-2-312 is not controlled by *Galloway* and the other cases cited above.  By this claim, Paradies seeks indemnification as a remedy for violation of state statutory law, not for violation of a federal statute.  Therefore, to determine if this remedy is precluded, it must be determined if the claim upon which it is based is preempted by the Copyright Act.

Whether Paradies indemnification claim under § 11-2-312 is preempted by the Copyright Act is a two-part inquiry: "first, the work must be 'within the scope of the 'subject-matter of copyright' as specified in 17 U.S.C. §§ 102, 103,' and second, 'the rights granted under state law' must be 'equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.'" *United States ex. rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, **104 F.3d 1453, 1463 (4th Cir. 1997) (quoting *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993)).** The exclusive rights within the scope of a federal copyright are the rights to: "'(1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the work publicly; and (5) display the work publicly.'" *Rosciszewski*, *supra* **(quoting *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).** A state law claim "that infringe[s] one of the exclusive rights . . . [is] preempted by § 301(a) if the right defined by state law 'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights.'" *Rosciszewski*, *supra* **(quoting *Computer Assocs. Int'l*, *supra*) (other citations omitted).** The focus is on the elements of the cause of action, and "[t]o

avoid preemption, a cause of action defined by state law must incorporate

elements beyond those necessary to prove copyright infringement, and

must regulate conduct qualitatively different from the conduct governed by

federal copyright law." ***Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d**

**655, 659 (4ᵗʰ Cir. 1993).**

Section 11-2-312 of the Official Code of Georgia Annotated provides,

in pertinent part:

> § 11-2-312. Warranty of title and against infringement; buyer's
> obligation against infringement
>
> (1) Subject to subsection (2) of this Code section[, concerning
> exclusion or modification of warranty of title,] there is in a
> contract for sale a warranty by the seller that:
>> (a) The title conveyed shall be good, and its transfer
>> rightful; and
>> (b) The goods shall be delivered free from any
>> security interest or other lien or encumbrance of
>> which the buyer at the time of contract has no
>> knowledge.
>> **. . .**
>
> (3) Unless otherwise agreed a seller who is a merchant
> regularly dealing in goods of the kind warrants that the goods
> shall be delivered free of the rightful claim of any third person
> by way of infringement or the like . . . .

**Ga. Code Ann. § 11-2-312(1), (3).** Additionally, the official comments to §

11-2-312 make clear the purpose of the provision, as well as the conduct

which it governs:

> Subsection (1) makes provision for a buyer's basic needs in
> respect to a title which he in good faith expects to acquire by
> his purchase, namely, that he receive a good, clean title
> transferred to him also in a rightful manner so that he will not
> be exposed to a lawsuit in order to protect it.

***Id.*, at comment 1.** In other words, the warranty of title regulates the

relationship between buyers and sellers of goods in the representation of

title to those goods, in order to protect the good-faith expectations of

buyers. On the other hand, the Copyright Act regulates the relationship

between the creator of a work and those who would reproduce, prepare

derivative works, or distribute copies of such work, all in order to protect

the works' creators. These laws, therefore, regulate "qualitatively different

conduct."

Additionally, a breach of warranty of title claim requires elements

above and beyond those necessary to prove copyright infringement.

Absent the added elements of (1) the promise by the seller to the buyer

that title conveyed is good and (2) delivery of goods to which title is in fact

flawed, conduct that would suffice to violate the Copyright Act does not

amount to a breach of the warranty of title under § 11-2-312.

The elements of a breach of warranty of title claim under § 11-2-312

and a copyright infringement claim are different, and the laws regulate

"qualitatively different conduct."  Bristar's motion to dismiss Paradies' claim

for indemnification under § 11-2-312 for failure to state a claim upon which

relief can be granted is, therefore, denied.  ***See Dolori Fabrics,* 662 F.**

**Supp. at 1358 (granting judgment in favor of defendant-retailer**

**against defendant-wholesaler on retailer's cross-claim for**

**indemnification under § 2-312 of the commercial code); *Sony***

***Computer Entm't Am. v. GameMasters*, 2001 U.S. Dist. LEXIS 9784**

**(N.D. Cal. 2001) (granting judgment in favor of defendant-storeowners**

**on their cross-claim for indemnification against the distributors who**

**had sold them the copyright-infringing products under the warranty of**

**title and against infringement found in Cal. Com. Code § 2312(3));**

***Christopher v. Cavallo*, 662 F.2d 1082 (4th Cir. 1981) (allowing breach**

**of warranty of title claim to proceed against playwright by dinner**

**theatre company based on company's incurring liability for**

**production of playwright's copyright-infringing play, which she had**

**claimed to own); *see also* David Hricik, *Remedies of the Infringer: The***

***Use by the Infringer of Implied and Common Law Federal Rights,***

***State Law Claims, and Contract to Shift Liability for Infringement of***

***Patents, Copyrights, and Trademarks*, 28 Tex. Tech. L. Rev. 1027,**

**1065-69 (discussing the viability of claims under U.C.C. § 2-312 in the realm of copyright infringement).**

## IV. ORDER

**IT IS, THEREFORE, ORDERED**, that Defendant Bristar, Inc.'s motion to dismiss the complaint is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant Bristar's motion to dismiss the cross-claim of Defendant Paradies for indemnification based on Georgia common law is **GRANTED;** the motion to dismiss the remaining cross-claims of Defendant Paradies is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Pure Country Weavers, Inc., shall have 14 days from entry of this Memorandum and Order in which to supplement its complaint pursuant to Fed. R. Civ. P. 15(d) as outlined by the Court *infra.*

**IT IS FURTHER ORDERED** that after Plaintiff's supplemental filing, the Defendant Bristar shall have 20 days in which to file answer or other responsive pleading.

**Signed: January 20, 2006**

Lacy H. Thornburg
United States District Judge